**No.:**

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

### *In re J.H.*

---

**from the United States District Court
for the Central District of California
Case# 24-CR-00527 / The Honorable Stephen V. Wilson**

---

## PETITION FOR WRIT OF MANDAMUS PURSUANT TO
## 18 U.S.C. § 3771(d)(3)

---

**Caree Annette Harper
LAW OFFICES CAREE HARPER
401 Wilshire Blvd. Suite 1200
Santa Monica, CA 90401
(213) 386-5078 Tel.
Email: *Ch1@attorneyharper.com***


**Attorneys for Petitioner / Crime Victim "J.H"**

# TABLE OF AUTHORITIES

<u>**Page(s)**</u>

## <u>Supreme Court Opinions</u>

*Calderon v. Thompson, 523 U.S. 538 (1998)*     *23*
*Ex parte Bain*, 121 U.S. 1 (1887)     <u>22</u>
*Gideon v. Wainwright*, 372 U.S. 335 (1963)     <u>14</u>
*Morris v. Slappy*, 461 U.S. 1 (1983)     <u>11</u>, <u>16</u>

## <u>Federal Court Opinions</u>

*United States v. Biddings*, 416 F. Supp. 673 (N.D. Ill. 1976)     <u>18</u>
*United States v. Bynum*, 327 F.3d 986, 991 (9th Cir. 2003)     6
*In re Simons*, 567 F.3d 800 (6th Cir. 2009)     <u>15</u>
*Kenna v. U.S. Dist. Court*, 435 F.3d 1011 (9th Cir. 2006)     <u>8, 9</u>
*United States v. Cowan*, 524 F.2d 504 (5th Cir. 1975)     <u>18</u>
*United States v. Heaton*, 458 F. Supp. 2d 1271 (D. Utah 2006)     <u>18</u>
*United States v. Mahon*, No. CR09-712-PHX-DGC, 2010 WL 94247 (D. Ariz. Jan. 5, 2010)     <u>11</u>
*United States v. Miller*, 722 F.2d 562 (9th Cir. 1983)     <u>16</u>
*United States v. Stevens*, 239 F. Supp. 3d 417 (D. Conn. 2017)     <u>23</u>

## <u>Out of State Opinions</u>

*Syed v. Lee*, 488 Md. 537, 322 A.3d 578 (2024)     <u>14</u>

## United States Code

18 U.S.C. § 3771     *passim*

## Rules

9th Cir. R. 21-5     <u>6</u>
Fed. R. App. P. 21     <u>6</u>
Fed. R. Crim. P. 32 (k)     <u>22</u>
Fed. R. Crim. P. 48     *passim*

## PETITION FOR MANDAMUS

Comes now the Petitioner, J.H., by and through her attorney who pursuant to 18 U.S.C. § 3771(d)(3), Fed. R. App. P. 21, and CIRCUIT 9th Cir. R. 21-5 which states as follows:

## PREFILING REQUIREMENT AND EMERGENCY NATURE OF THE PRODEEDING

Unless the litigants of this proceeding, with the approval of the court, have stipulated to a different time period for consideration, 18 U.S.C. § 3771(d)(3) requires that this Court must take up and decide this application forthwith within seventy-two (72) hours after this Petition has been filed. Only a five-day stay is authorized by the Court under 18 U.S.C. § 3771(d)(3).

J.H.'s Counsel has provided advance notification to the filing of this Petition as required under CIRCUIT 9th Cir. R. 21-5.

## RELIEF SOUGHT

Petitioner requests that this Honorable Court issue a writ of mandamus under 18 U.S.C. § 3771 directing the United States District Court for the Central District of California to:

(1) Stay all proceedings in the case including the sentencing that is scheduled for June 2, 2025, for five days as authorized under 18 U.S.C. § 3771(d)(3).

(2) Accept the Notice of Appearance by counsel for the J.H. (Document 91) and rejected by the Court (Document 92)

3

(3) Allow counsel for J.H. to be heard to address the legal interests involving J.H.'s rights as a crime victim under 18 U.S.C. § 3771.

(4) Vacate the dismissal of the part of the indictment that reduced the Defendant's conviction from a felony to a misdemeanor. (Document 103, Page 7.)

(5) Direct that the Court take up and decide J.H.'s assertion of a victim's right forthwith and before the Court determines whether to dismiss the part of the indictment that would reduce the Defendant's conviction from a felony to a misdemeanor.

## ISSUE PRESENTED

**I.   Whether the District Court violated the rights of the victim under the Crime Victims' Rights Act.**

## FACTS NECESSARY TO UNDERSTAND THE ISSUES

The Government charged Defendant with violating 18 U.S.C. § 242, alleging that he deprived J.H. of her constitutional right to be free from excessive force under color of law. ECF No. 1.  (Document 103, Page 1) According to the indictment, L. A. Sheriff's deputy, Defendant Kirk and another deputy were responding to a possible robbery. Kirk and the other deputy arrived on scene and handcuffed and detained a man matching the description of the male suspect, while a female, JH, who matched the description of the female suspect, videotaped the deputies. While videotaping, JH told Kirk that he had a legal obligation to inform

4

DB of the basis for the detention and that she was broadcasting his actions on social media. The indictment alleges that Kirk then approached JH without giving any commands and attempted to grab her phone. JH turned away, at which point Kirk, grabbed JH by her arm, hooked his left hand behind her neck, and violently threw her to the ground.

While on the ground, Kirk yelled at JH to "get on the ground", and she told him that "it's already on YouTube Life." Implying video of Kirk and the other deputy handcuffing DB had already been made public. Kirk then placed his knee on JH's shoulder and when JH yelled for Kirk to "stop" and called him an expletive, Kirk cocked his right arm back with a clenched fist and said "Stop or you're gonna get punched in the face." Kirk then pressed his knee into JH's neck and she said "get your neck [sic] off my ...off my... I can't breathe". While on top of JH, Kirk used his LASD radio to misleadingly report that he was in a "fight".

Shortly thereafter, without giving any additional commands to JH, Kirk sprayed her twice in the face with pepper spray. JH received medical attention for the pepper spray used on her and the injuries she received from being thrown to the ground. The indictment also alleges that Kirk then drafted and submitted a misleading report to LASD in which he portrayed JH as a threat to his physical safety, claiming that JH assaulted him, attempted to hit him, and took a "fighting" or "bladed" stance.

The district court held a three-day jury trial in February, 2025. ECF Nos. 43, 45, 50. The jury returned a guilty verdict to the felony count. (Document 103, Page 1)

The Defendant moved to set aside the verdict. The Court denied the motion, finding that the evidence presented at trial was sufficient to support the jury's decision. See ECF No. 75. (Document 103, Page 1)

On May 1, 2025, the Government filed a Rule 11(c) 1 (C) post-verdict Plea Agreement between the Government and the Defendant. (Document 82).

On May 7, 2025, attorney Caree Harper filed a Notice of Appearance for Crime Victim J.H. who planned to fully assert her rights under 18 U.S.C. § 3771. (Document 91)

On May 8, 2025, a Notice of Deficiency stating that "the represented party is not a party to the case."[1] was entered regarding the appearance for J.H. (Document 92).

On May 13, 2025, the Government's Response to order of May 6, 2025 was filed on May 13, 2025, to provide a Memorandum of Points and Authorities (Document 93) and on May 13, 2025, the Government filed its Position Statement in Response to Pre-Sentence Report RE: Defendant Travor James Kirk. (Document 94)

---

[1] The CVRA ***changed*** the justice system not only by making victims **independent participants**, but also by creating judicial obligations to "ensure" the rights of crime victims. (See discussion below)

6

On May 15, 2025, the Government files a Supplemental Response to Order of May 6, 2025. (Document 95)

On May 16, 2025, the Defendant joined in the Government' Fed. R. Crim P, 48(a) motion. (Document 97)

On May 18, 2025, Crime Victim, J.H. filed an Assertion of Rights under 18 U.S.C. § 3771 on the matters before the court. (Document 100)

For the first time, in the new Plea Agreement at pages 8-9, it was alleged by the government that JH **"swatted"** at Kirk and **"resisted"**. These new purported actions of JH were not proven in the criminal trial or testified to in the civil litigation. The government was allowed to create fake facts and accuse the victim of lying during the hearing while she was forced to sit and bear it without opportunity to rebut this new fictional "evidence". The government even present still snapshots of the victims hands during the initial takedown (the actual body cam footage was not used presumably because it was too damning).

On May 19, 2025, at the sentencing hearing, the District Court acknowledged reading the impact statement. (Dkt. #100) At that hearing, the Government moved to dismiss the portions of the indictment against the Defendant that elevated his charge from a misdemeanor to a felony, namely, the allegations that the Defendant **used a dangerous weapon and that his use of force resulted in bodily injury**. See ECF No. 82. Defendant consented to the Rule 48(a) motion. (Document 103)

The victim was granted an opportunity to address the court. (Dkt. 101)  The district court heard argument on the Rule 48(a) motion from the Government who acted as **special defense counsel** and at one point even assumed the state of mind of the Defendant by saying he didn't grab JH's hand to stop her from filming but because the hand was closest to him.  Up to that point no one had heard what the defendant was thinking and unfortunately their were not adversaries to cross-examine AUSA Keenan as he stepped into the defendant's shoes as his most zealous advocate.

**Mr. Keenan went on to say the "trial was flawed, in my view...we have concerns about the ultimate fairness of the trial," and "I don't need to worry about that strict prosecutorial discretion. I can make a judgment on that, and I don't need the Ninth Circuit to tell me whether I'm right".[1]**
J.H.'s counsel was not heard on the argument on the Rule 48(a) motion.

At one point, the district court noted it had "**nothing**" from the government except "you're the government. The government indicated it chooses what charges to bring, and the court would be stepping on the government's toes by not granting the Rule 48(a) motion."  When discussing whether there was excessive force the government argued that the force was "*barely* excessive", which the district court compared to being "a little bit pregnant" and stated there is either "excessive force"

---

[1] Contemporaneous notes of counsel, as time did not allow counsel to get a transcript.

or there is not. The government argued it has prosecutorial discretion under Article 2 which is where the executive power rests, and there's lots of discretion.

The government set out **new facts** and false facts surrounding the crime **including blaming victim J.H.**, which were different from the facts that were presented at the trial. Prosecutor Keenan even went so far as to call the victim a liar by saying: "Ms. [H], in her summary of injuries are inconsistent with the evidence at trial." The district court did not agree with the government's new assessment of the evidence. (Doc 103, page 3, footnote 2) nonetheless the lower court did a literal 180 degree turn and granted the prosecution's request for a misdemeanor after finding "no good cause" or "substantial belief that the Defendant was not guilty." Both the Court and AUSA Keenan ignored the victim's medical records attached as an Exhibit (Dkt 99 & 100).

Three attorneys resigned from the U.S. Attorney's Office over this case and all trial counsel removed themselves as "attorneys of record" the day the new administration gave the Defendant the post-verdict misdemeanor plea deal.[1]

Other facts will be address as needed.

---

[1] https://www.dailyjournal.com/article/385880-judge-allows-u-s-attorney-to-downgrade-deputy-sheriff-s-conviction
https://www.latimes.com/california/story/2025-05-27/federal-judge-drops-felony-charge-convicted-sheriffs-deputy

## STANDARD OF REVIEW

In deciding a Victim mandamus petition under the Crime Victims' Rights Act (hereinafter "CVRA"), the court of appeals shall apply ordinary standards of appellate review.                18    U.S.C.    §    3771(d)(3). This Petition regarding interpreting J.H.'s rights involve questions of law which are reviewed *de novo*.  *United States v. Bynum*, 327 F.3d 986, 991 (9th Cir. 2003)

### <u>REASONS WHY THE WRIT SHOULD ISSUE:</u>

### I.    THE LOWER COURT ERRONEOUSLY RELINQUISHED ITS JUDICIAL POWERS TO THE EXECUTIVE BRANCH OF GOVERNMENT IN VIOLATION OF THE  SEPARATION OF POWERS REQUIREMENT.

The Ninth Circuit needs to intervene immediately to prevent a travesty of justice wherein the lower Court literally handed over its power to the new administration's U.S. Attorney's Office.  The government offered a post-verdict plea agreement to a defendant who was convicted of felony deprivation of rights, 18 U.S.C. Section 242. The new prosecutor, Mr. Keenan's tortured argument spanned from "we are the Government and we can do what we want" to "the trial was <u>unfair</u> to the Defendant" because he was just a little bit guilty and he is being too severely punished.  The prosecutor accused the former prosecutors from his own office of making arguments that were **not "<u>fair and just</u>"** to the Defendant. Not only that, but that AUSA Keenan said he believed the trial attorneys emphasized potentially ***<u>misleading evidence</u>*** and made arguments ***<u>not fully supported by evidence</u>***.  The

10

only remedy, according to the new administration, is to strike part of the jury's verdict to get the desired result: probation on a misdemeanor.

In some strange turn, the government somehow convinced the lower Court that he presided over an **"unfair" trial**, where three veteran prosecutors violated their sworn duty and unfairly emphasized incorrect law about violating policies at the Sheriff's Department. The prosecutor then took the courtroom on an into the twilight zone wherein he actually got into the mind of the Defendant (who took the 5th in both the criminal trial and the civil litigation) and he testified ***for the Defendant*** and explained that Deputy Kirk was not reaching for JH's cell phone to stop her from filming - he was merely grabbing the hand that was closest to him. Mr. Keenan threw every piece of feces onto the courtroom wall and after literally calling the victim a liar, figuratively calling the judge incompetent, and intentionally impugning the character of the noble trial counsel/ former prosecutors, he ended up where he started: "we are the Government and we say so" was the only rationale offered for the Rule 48(a) motion to be granted.

The lower Court ignored precedent in *Weber*[1] that found that the government had "developed a serious and substantial doubt as to [the defendant's] guilt."

## Rule 48 is not "in the public interest"

"In the public interest" means actions or decisions that benefit the general well-being of society as a whole. It's about prioritizing the common good over

---

[1] *United States v. Weber, 721 F.2d 266, 268 (9th Cir. 1983)*

individual or narrow interests. The prosecutor only advocated for Trevor Kirk.

Neither the lower court nor Mr. Keenan contemplated the chilling affect a ruling

like this will have on potential jurors, witnesses, investigators, etc.

Case law favors denying the R48 motion.  The Court repeatedly asked the

prosecution to explain how can I grant this motion when there has been **<u>no showing</u>**

**<u>of "good cause" or "substantial belief that the Defendant is not guilty?"</u>**  To

date, the government has yet to answer the question.

### II.    Separation of powers demands the role of the Judiciary be respected and accorded to prevent an improper amendment to an indictment

The Fed. R. Crim. P. 48 Motion was not a motion to dismiss a count of the

indictment which in certain circumstances is allowed, but rather a *de facto* improper

actual amendment of an indictment.  While a prosecutor can amend an information,

authority does not exist for a prosecutor to amend an indictment.  Which is issued by

a grand jury.   In effect, the Court amended part of the indictment to delete that the

Defendant *<u>used a weapon and he used force which resulted in bodily injury to J.H.</u>*

Not only were the substantive terms of the indictment changed, but also the facts

surrounding the offense was changed substantively from a felony to a misdemeanor.

There is a fundamental distinction between the Information and the Indictment which

must be returned by a grand jury. If the indictment could be changed by the court or

by the prosecutor, then it would no longer be the Indictment returned by the grand

jury and be subject to be set aside.

Grand Juries are part of the Judicial Branch of Government and **not** the Executive Branch of Government.  The Supreme Court, reviewing the history of the grand jury, quoted Lord Mansfield on the subject: [T]here is a great difference between amending Indictments and amending Informations. Indictments are found upon the oaths of a jury, and ought only to be amended by themselves; but Informations are as declarations in the king's suit.  An officer of the Crown has the right of framing them originally; he may, with leave, amend in like manner, as any plaintiff may do.  *Ex parte Bain*, 121 U.S. 1, 6 (1887) (Grant a writ of habeas corpus releasing the defendant as an amended charge was not the charge issued by the grand jury.)  Allowing the <u>Executive Branch</u> to amend an Indictment **violates separation of power** founded upon the oaths of a grand jury.  The district court was wrong to allow the Indictment to be amended, and this Court should void what in fact was an amendment even though couched as a dismissal of part of an Indictment.  Contrary to what the new administration is arguing our country is not being run by and King, and to say "we are the Government and we can dismiss *what* we want *when* we want" is not sufficient to nullify a jury verdict.

Fed. R. Crim. P. 32 (k) also requires the Court where there is a jury verdict in a criminal case be set in the judgment of conviction,

> **In the judgment of conviction**, the **court must set forth** the plea, the **jury verdict** or the court's findings, the adjudication, and the sentence. If the defendant is found not guilty or is otherwise entitled to be discharged, the court must so order. The judge must sign the judgment, and the clerk must enter it. (emphasis added)

13

By striking part of the indictment, the jury verdict is inconsistent with the indictment.  While a sentence for the offense rendered by the jury will be a constitutional sentence, the validity of any conviction under the current posture of the decision below is potentially void or voidable.    While the defendant joined in amending the language in the indictment, nothing prevents the Defendant from challenging his conviction because the amendment was improper under law.

## JH IS AN INDEPENDENT PARTICIPANT

In *Kenna v. U.S. Dist. Court*, 435 F.3d 1011, 1013 (9th Cir. 2006), the Court indicated,

> The criminal justice system has long functioned on the assumption that crime victims should behave like good Victorian children—seen but not heard. The Crime Victims' Rights Act sought to change this by making victims **independent participants** in the criminal justice process. See Scott Campbell, Stephanie Roper, Wendy Preston, Louarna Gillis, and Nila Lynn Crime Victims' Rights Act, Pub. L. No. 108–405, §§ 101–104, 118 Stat. 2260, 2261–65 (2004) (codified at 18 U.S.C. § 3771).

The CVRA changed the justice system not only by making victim's independent participants, but also by creating judicial obligations to "ensure" the rights of crime victims. As part of the function of the judicial system, Congress has mandated to ensure victims' rights.   In deciding in *Kenna* that victims could be personally heard and not just heard in writing, the Court indicated,

> while allowing the prosecutor and the defendant the opportunity to address the court, would treat victims as secondary participants in the sentencing process. The CVRA clearly meant to **make victims full participants**. *Kenna*, 435 F.3d at 1016.

This Court envisions that the role of victims in participation in the system would be more frequent.  This Court encouraged district courts to modify their own procedures to give "full effect" to the CVRA.

> As victim participation in the criminal justice system becomes more common, we expect CVRA claims to become more frequent, and thus encourage district courts to modify their own procedures so as to give full effect to the CVRA.  *Kenna*, 435 F.3d at 1018.

Now almost 20 years after *Kenna*, this Court must consider what it means for a victim to be a full participant.  The lack of procedures in the district court denied J.H. the ability to have victim's counsel enter documents in the same manner as counsel for the government and the defendant can be heard. The Court's order dismissing portions of the indictment improperly failed to consider and address J.H.'s rights as a crime victim and thus denied J.H. the rule of law.

## III. THE DISTRICT COURT IMPROPERLY DENIED PETITIONER'S RIGHTS UNDER THE CRIME VICTIMS' RIGHTS ACT & ALLOWED U.S. ATTORNEY TO ARGUE AGAINST VICTIM'S INTEREST IN A CONFLICT OF INTEREST.

### A.    THE CRIME VICTIMS RIGHTS ACT (CVRA) PROVIDE CRIME VICTIMS WITH IMPORTANT RIGHTS THAT INCLUDES A CONCOMITANT JUDICIAL OBLIGATION TO ENSURE THOSE RIGHTS THAT WAS DENIED BELOW

18 U.S.C. § 3771(a) enumerates the rights granted to a crime victim including:

> (4) The right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding;
> (8) The right to be treated with fairness and with respect for the victim's dignity and privacy.

15

18 U.S.C. § 3771(b)(1) establishes responsibilities of the judicial to ensure victims rights including stating clearly on the record the reasons for denying relief to victims.

> In any court proceeding involving an offense against a crime victim, the court shall ensure that the crime victim is afforded the rights described in subsection (a). …. The reasons for any decision denying relief under this chapter shall be clearly stated on the record.

The government is required to advise a crime victim may seek the advice of an attorney regarding the victim's rights under the CVRA.  18 U.S.C. § 3771(c)(2). Moreover, the Government must use best efforts to <u>accord victims of their rights under the CVRA.</u>  18 U.S.C. § 3771(c)(2).

Acknowledging at the hearing on May 19th that the district court had seen the pleading filed by J.H.'s counsel, the district court never clearly **stated on the record** that it considered the victim's interests nor the reasons for denying the relief sought by J.H.  By agreement, the government and the defendant agreed to dismiss part of an indictment which had the effect of modifying the maximum possible sentence from ten years to one year.  **There is no authority that allows part of an indictment to be dismissed.**  In essence, the parties sought to substantively amend part of an indictment which is not allowed other than by members of a grand jury.  infra.

Courts must consider and not ignore the interests of crime victims.  *Cf. Morris v. Slappy*, 461 U.S. 1, 14 (1983) ("But in the administration of criminal justice, courts may not ignore the concerns of victims.").  Being reasonably heard and fairness

includes not just hearing the words of a victim, but also considering those interests and ruling on those interests. *infra.*

### B. THE DISTRICT COURT FAILED TO COMPLY WITH THE MANDATE OF THE CRIME VICTIMS' RIGHTS ACT TO ACCORD J.H. THE RULE OF LAW.

The District Court itself is obligated to ensure that J.H. is afforded the rights subscribed in subsection (a) of 18 U.S.C. § 3771.    18 U.S.C. § 3771(b) ("In any court proceedings involving an offense against a crime victim, the court shall ensure that the crime victim is afforded the rights described in subsection (a).").  To this end, the CVRA plainly states that "The district court shall take up and decide any motion asserting a victim's right *forthwith.*" 18 U.S.C. § 3771(c)(3) (emphasis added).  The failure of the district court to rule on the motion for a three-month period can be construed as an effective denial of rights under the CVRA. *In re Simons*, 567 F.3d 800, 801 (6th Cir. 2009) (Noting that may not have been any substantive proceedings in the criminal action during this three-month period, the sealing of the record prevented the petitioner from determining whether his rights under the statute were being violated.)  While there is not a long period as is *Simons*, **here there was a substantive proceeding to erase the Defendant's felony conviction that adversely impacted J.H.'s rights as a crime victim.** Determining and applying victim's rights accords a crime victim with the right "to be treated with fairness and with respect for the victim's dignity...." 18 U.S.C. § 3771(a)(8).  *Id.* at 801.  While the District Court has not ruled, its failure to decide the matter forthwith before determining substantive

17

issues impacting victim's rights is a *de facto* denial of rights.   See also, *Morris v. Slappy*, 461 U.S. 1, 14 (1983) ("But in the administration of criminal justice, courts may not ignore the concerns of victims.").

By its post hoc attempt to change the facts as found by the jury, **including attacking JH**, JH was denied her right to be treated with respect for her dignity.   By the district court's acquiescence to the Government's authority and actions without considering contradictory legal authority, the court denied J.H. her right to be heard and right to be treated with respect for her dignity.   J.H. deserves the rule of law.

### C. THE DISTRICT COURT'S SEPARATION OF POWER'S ANALYSIS IS MISPLACED AND INCORRECT AS APPLIED

Fundamentally, it was an error below to defer to the Government.   Contrary to the Government, the judicial branch does not have to agree with the executive branch under the Constitution under a Rule 48(a) motion. Here, the Rule 48(a) was not even a proper Rule 48(a) motion.   There is no presumption of correctness to the Government as appears to have been provided below.   The decision below was not in accord with precedent or the rule of law.

#### 1. Separation of powers demands the role of the Judiciary be respected and accorded under a Fed. R. Crim. P. 48(a) motion

In footnote 14 of the district court's order, the court deferred to the executive branch based upon separation of powers principles. The lower court:

> The Court is not aware of—and the Government did not cite—any published cases where a court dismisses only a portion of a single count of an indictment

18

pursuant to Fed. R. Crim. P. 48 after a jury verdict. Each of *Rinaldi¸ Weber*, *Gonzalez*, and *Garcia-Valenzuela* involved either a complete dismissal of an indictment, or a dismissal of entire counts of an indictment. However, given the separation of power principles at play, and the broad deference that must be given to the executive in charging decisions, this distinction is immaterial. *See United States v. Miller*, 722 F.2d 562, 564 (9th Cir. 1983) (in making a charging decision, the prosecution makes "an executive choice" and "his discretion is almost absolute"). (Document 103, Page 4) [1]

It is true that prior to criminal charges being filed, the executive branch has a broad deference in what criminal charges to bring. However, once a federal criminal case is filed, that case invokes the jurisdiction of the federal judiciary. The Government is a party to that case, but the matter itself is under the judicial branch and subject to judicial practices. The judiciary is an independent branch of government and not subject to the will of the executive branch. For example, under Fed. R. Crim. P. 48 to dismiss a case, leave of court is required.[2] The leave of court requirement is derived from separation of powers and is constitutional.

> The Attorney General stakes his claim to absolute power to dismiss the proceedings even without "leave of court" squarely upon the Doctrine of Separation of Powers as derived from the provisions of the

---

[1] The lack of any case law allowing a court to dismiss only a portion of a single count of an indictment pursuant to Fed. R. Crim. P. 48 after a jury verdict suggest that no authority exists for the extraordinary request. In fact, the district court striking part of the indictment violated established caselaw that indictment cannot be amended. The parties cannot by consent confer jurisdiction as occurred below. *Infra.*

[2] Rule 48. Dismissal

(a) By the Government. The government may, with leave of court, dismiss an indictment, information, or complaint. The government may not dismiss the prosecution during trial without the defendant's consent.

(b) By the Court. The court may dismiss an indictment, information, or complaint if unnecessary delay occurs in:

(1) presenting a charge to a grand jury;

(2) filing an information against a defendant; or

(3) bringing a defendant to trial.

Constitution establishing three separate, but co-equal branches of government, each supreme in its own sphere; and more particularly upon Article II, Section 3 which provides in material part that the President "shall take Care that the Laws be faithfully executed" and upon 28 U.S.C. ss 516, 519, empowering the Attorney General as surrogate of the President to conduct or supervise all litigation in which the government is a party. The court-appointed prosecutors counter that the Doctrine of Separation of Powers implied in the Constitution does not cast the three branches of our government into water-tight compartments; that room is left for some commingling of responsibilities in the orderly administration of governmental affairs; that by the promulgation of Rule 48(a) as part of the Rules of Criminal Procedure, Congress intended to vest in the courts a shared responsibility for the dismissal of prosecutions once lodged in the court; and that the power to grant leave to dismiss a criminal prosecution carries with it the correlative power to exercise a discretion to deny leave to dismiss and, if necessary, to effectuate such denial by the appointment of private prosecutors.

*United States v. Cowan*, 524 F.2d 504, 507 (5th Cir. 1975). See also. *United States v. Biddings*, 416 F. Supp. 673, 675 (N.D. Ill. 1976) (Rejecting dismissal and indicating "The manifest public interest, represented by several unrecanting victims, requires a trial to vindicate them or the defendant, as alternatively requested by his attorney.")

Notably all of the cases cited by the lower court in dismissing part of a count of an Indictment **predated the 2004 enactment of the CVRA**. None of those cases relied on by the district court considered the judicial obligation under 18 U.S.C. § 3771(b)(1). Regarding dismissal of a criminal case, hearing a victim's views on the motion to dismiss is important for fairness to victims that is required under the CVRA. *United States v. Heaton*, 458 F. Supp. 2d 1271, 1273 (D. Utah 2006).

20

When the government files a motion to dismiss criminal charges that involve a specific victim, the only way to protect the victim's right to be treated fairly and with respect for her dignity is to consider the victim's views on the dismissal. It is hard to begin to understand how a victim would be treated with fairness if the court acted precipitously to approve dismissal of a case without even troubling to consider the victim's views. To treat a person with "fairness" is generally understood as treating them "justly" and "equitably." A victim is not treated justly and equitably if her views are not even before the court. Likewise, to grant the motion without knowing what the victim thought would be a plain affront to the victim's dignity. Indeed, even the pre-CVRA case law recognized a dismissal to be "clearly contrary to the public interest" if the prosecutor appeared to be motivated to dismiss by animus toward the victim. The court cannot make a fully informed decision about whether the prosecutor is acting out of animus to a victim without having the victim's views on the subject. *Id.* at 1272–73

As recognized by the Court of Appeals for the Fifth Circuit in a post

CVRA case regarding a Fed. R. Crim. P. 48(a) dismissal, the judicial rule

must validate the public interest including crime victim's rights,

But in both cases—an accepted/rejected Rule 11 guilty plea *or* a granted/denied Rule 48(a) dismissal—the public interest, especially that of crime victims, rests crucially on court-approval. In short, the judicial role stays present and constant throughout, and courts must validate the public interest, above all, including rights that Congress has given to crime victims. *In re Ryan*, 88 F.4th 614, 626 (5th Cir. 2023)

In footnote 2, the district court indicated,

To be clear, the Court is not saying that it agrees with the Government's assessment of the case. But the Court's assessment of the case is immaterial. What matters is what prompted the Government to bring the Fed. R. Crim. P. 48(a) motion. The Government's new view of the evidence is relevant to that question regardless of whether the Court agrees with the Government's analysis. (Document 103, Page 3)

21

**The district court is wrong that its assessment is immaterial**.  The district court's assessment as well as this Court's assessment is crucial to validate the public's interest including the rights given to crime victim.  If the government and the defendant can adopt a new view of the evidence favoring the defendant's unproven theory of the case that negates the jury verdict and the district court's assessment of the evidence, that is contrary to the interest of justice including the rights of victims. [1]

The district court order failed to even mention the crime victims' rights despite J.H.'s counsel attempting to address the importance of victim's rights and interests.  (Document 103) The proceedings below did not include forthwith review as required by law.  It did not comply with setting reason on the record.  *supra.* It is not ensuring a constant judicial role in ensuring victim's rights as required by law. The broad deference given to the executive branch is inconsistent with the separation powers of the judiciary and contrary to J.H.'s interest as a crime victim.

### D.    THE WRIT IS APPROPRIATE AND SHOULD ISSUE UNDER THE CIRCUMSTANCES.

A writ here is entirely appropriate under the circumstances.  The Supreme Court has recognized that victims of crime have powerful and legitimate interest in

---

[1]  The statute only required injury and not serious bodily injury.  The facts were that a weapon – pepper spray was used and there were injuries. The analysis of whether there was an injury is similar to the analysis of whether an individual is either pregnant or not.  While the degree of injury may have applicability in sentencing factors under the Sentencing Guidelines or for a departure, those were facts found by a jury as part of the judicial process.

punishing the guilty. *Calderon v. Thompson*, 523 U.S. 538, 556 (1998). In simple terms, as the district court failed to respect the rights and interests of the victim before vacating part of the indictment, this Court should direct the district court to redetermine the matter *de novo*. *Cf. United States v. Stevens*, 239 F. Supp. 3d 417, 425 (D. Conn. 2017). (The sound administration of justice demands the rejection of actions that fail to respect the rights of crime victims) This Court's writ should provide proper guidance in future proceedings in this matter in accord with the rule of law.

The jury finding of the Defendant committed a felony offense and the seriousness of those consequences provided J.H. a modicum of justice that recognizes the harm she received. Justice and fairness for all means this Court should issue a writ of mandamus. The CVRA clearly requires that "In any court proceeding involving an offense against a crime victim, ***the court shall ensure that the crime victim is afforded the rights*** described in subsection (a) [Rights of crime victims]." 18 U.S.C. § 3771(b)(1) (emphasis added).

///

///

Further proceedings in the district court where the court should consider argument from Crime Victim J.H.'s counsel including the contrary authority not previous considered by the court below as well as ensures the victim's right to fairness and respect for J.H.'s dignity.

Dated: June 2, 2025                                  Respectfully submitted,

                                                           /s/ Caree Harper
                                        Attorney for Petitioner/ Crime Victim "J.H."

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Circuit Rule 32-1(b) because it contains 6097 words, excluding the portions exempted by Rule 32(f) of the Federal Rules of Appellate Procedure.

This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)(A) and (a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point TIMES NEW ROMAN font.

Dated: JUNE 2, 2025    Respectfully submitted,

/s/ Caree Harper
*Attorney for Crime Victim "J.H."*