No. 25-3472

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

IN RE. J.H.,

CRIME VICTIM J.H.,

*Petitioner,*

*v.*

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA,

*Respondent,*

UNITED STATES OF AMERICA & TREVOR JAMES KIRK,

*Real Parties In Interest.*

*MANDAMUS PROCEEDING FROM THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DISTRICT COURT NO. 2:24-CR-00527-SVW*

## GOVERNMENT'S RESPONSE TO CRIME VICTIM'S PETITION FOR WRIT OF MANDAMUS

BILAL A. ESSAYLI
United States Attorney

CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division

ROBERT J. KEENAN
Assistant United States Attorney

United States Courthouse
312 N. Spring Street
Los Angeles, CA 90012
Telephone: (213) 894-2400
E-Mail: rob.keenan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# TABLE OF CONTENTS

I    ISSUES PRESENTED ................................................................ 1

II   JURISDICTION................................................................... 3

III  STATEMENT OF THE CASE ........................................... 3

IV  STATEMENT OF FACTS.................................................. 6

    A.   The Offense.................................................................. 6

    B.   Trial and Conviction ................................................. 8

    C.   Rule 29 Motion and Continuances of Sentencing.................. 9

    D.   Post-Trial Agreement Regarding Plea & Sentencing and Victim J.H.'s Related Court Filings............................. 12

    E.   May 19, 2025: Hearing on Post-Trial Agreement, Sentencing, and the Government's Rule 48(a) Motion........ 17

    F.   The District Court Granted the Rule 48(a) Motion in Part, But Rejected the Parties' Rule 11(c)(1)(C) Agreement................................................................. 18

    G.   June 2, 2025: The Court Conducts a Continued Sentencing Hearing, and Neither J.H. Nor Her Attorney Show Up............................................... 20

V    STANDARD OF REVIEW............................................ 22

VI  ARGUMENT ................................................................ 22

    A.   Defendant's Request To "Stay" Sentencing Is Moot Because Defendant Has Already Been Sentenced ............. 22

    B.   The District Court Did Not Reject J.H.'s Attorney's Notice of Appearance ......................................... 24

# TABLE OF CONTENTS

C. J.H.'s Attorney Did Not Assert The Right to Personally Be Heard At the May 19, 2025 Hearing, and The District Court Did Not Deny Any Such Request ................. 26

D. The District Court Considered J.H.'s Objections to the Rule 48(a) Motion, and The CVRA Does Not Entitle Victims to Override The Government's Prosecutorial Discretion ............................................................................ 29

VII CONCLUSION ................................................................. 35

# TABLE OF AUTHORITIES

**Cases**

*In re Brock,*
   262 F. App'x 510 (4th Cir. 2008) .................................................. 31

*In re Davis,*
   -- F.4th --, 2025 WL 1551409 (9th Cir. June 2, 2025) ....... 22, 23, 24

*In re Doe,*
   57 F.4th 667 (9th Cir. 2023) ........................................................ 22

*In re Ryan,*
   88 F.4th 614 (5th Cir. 2023) ........................................................ 31

*In re Zackey,*
   2010 WL 3766474 (3d Cir. 2010) ........................................... 25, 28

*Rinaldi v. United States,*
   434 U.S. 22 (1977) .................................................................. 33, 34

*United States v. Burkholder,*
   590 F.3d 1071 (9th Cir. 2010) ............................................... 28, 29

*United States v. Eric Schmidt,*
   Case No. CR 22-174-SB ............................................................. 16

*United States v. Garcia Valenzuela,*
   232 F.3d 1003 (9th Cir. 2000) .................................................... 33

*United States v. Gonzalez,*
   58 F.3d 459 (1995) ...................................................................... 33

*United States v. Hayes,*
   394 F. App'x 302 (7th Cir. 2010) ................................................ 32

*United States v. Heaton,*
   458 F. Supp. 2d 1271 (D. Utah 2006) ......................................... 31

*United States v. Juan Zazueta,*
   SA CR 04-251-AHS (Jan. 19, 2007) ........................................... 11

*United States v. Kovall,*
   857 F.3d 1060 (9th Cir. 2017) .................................................... 31

*United States v. Rubin,*
   558 F. Supp. 2d 411 (E.D.N.Y. 2008) ......................................... 31

# TABLE OF AUTHORITIES (continued)

**Statutes**

18 U.S.C. § 242......................................................................... 8, 9, 12

18 U.S.C. § 3553(a) ...................................................................... 19

18 U.S.C. § 3771(a) .................................................................... 4, 27

18 U.S.C. § 3771(a)(4) ..................................................................... 4

18 U.S.C. § 3771(d)(3) ............................................................... 3, 23

18 U.S.C. § 3771(d)(5) ................................................................... 23

21 U.S.C. § 841(b)(1)(A) ............................................................... 17

**Federal Rules**

Fed. R. Crim. P. 11(c)(1)(C)......................................................... 4, 12

Fed. R. Crim. P. 29(c)...................................................................... 9

Fed. R. Crim. P. 48(a) ............................................................ 4, 15, 33

No. 25-3472

## IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

IN RE. J.H.,

CRIME VICTIM J.H.,

*Petitioner,*

*v.*

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA,

*Respondent,*

UNITED STATES OF AMERICA & TREVOR JAMES KIRK,

*Real Parties In Interest.*

*MANDAMUS PROCEEDING FROM THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DISTRICT COURT NO. 2:24-CR-00527-SVW*

## GOVERNMENT'S RESPONSE TO CRIME VICTIM'S PETITION FOR WRIT OF MANDAMUS

## I

## ISSUES PRESENTED

A.     Whether the victim's belated request for a "stay" is moot given that the district court sentenced defendant on June 2, 2025, and nothing else remains of the proceedings before the district court.

B.     Whether the district court abused its discretion by
(allegedly) failing to "accept" a general notice of appearance filed by
counsel for the victim, given that the court (1) never struck the form
notice of appearance, (2) actually permitted victim's counsel to file a
legal brief objecting to the Government's motion to downgrade
defendant's conviction to a misdemeanor and its recommendation of a
probationary sentence, and (3) allowed the victim to be heard at the
hearing on the motion and sentencing.

C.     Whether the district court should be ordered to "allow" the
victim's attorney to be heard personally in court at a new sentencing
hearing, when the victim's attorney did not previously "assert" the right
to be heard personally at the May 19, 2025 hearing and the district
court never "denied" any such request.

D.     Whether the victim has standing to vacate the order
dismissing the felony allegations from the indictment or to otherwise
commandeer the Government's prosecution of defendant, in light of the
CVRA's express proviso that "[n]othing in this chapter shall be
construed to impair the prosecutorial discretion of the Attorney General
or any other officer under his direction."

2

## II

## JURISDICTION

This Court has jurisdiction under the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771(d)(3). The CVRA grants crime victims various rights and permits the Government and victims to enforce those rights by filing a mandamus petition, provided the victim first asserted the particular right in question and the district court denied the victim the right to exercise or receive the benefit of such rights. *See* 18 U.S.C. §§ 3771(a), (d)(3).

## III

## STATEMENT OF THE CASE

Petitioner's writ arises from an excessive-force case against an L.A. County Deputy Sheriff for his use of force in connection with the detention and arrest of victim-petitioner J.H. Defendant was convicted following a three-day trial in February. As the sentencing neared, the Government reevaluated the case and determined that a felony disposition was unwarranted and the Guidelines' sentencing range was unreasonably high. In the interest of justice, the Government decided that a misdemeanor disposition was appropriate with a one-year

3

probationary sentence if defendant admitted that he used excessive force and waived his rights to appeal. The parties thus entered into a Post-Trial Agreement Re. Plea & Sentencing pursuant to Fed. R. Crim. P. 11(c)(1)(C) in which the Government agreed to move to strike the special felony findings from the jury verdict, and defendant admitted he used excessive force and agreed to plead guilty to the misdemeanor § 242 violation.

On May 19, 2025, the district court held a hearing on the motion to strike under Fed. R. Crim. P. 48(a), the post-trial agreement, and sentencing. Before the hearing, J.H.'s attorney filed a legal brief objecting to the Government's post-trial agreement, the misdemeanor disposition, and the stipulated probationary sentence. At the hearing, the district court acknowledged reading the victim's brief. Moreover, J.H. was allowed to personally address the court pursuant to the CVRA, 18 U.S.C. § 3771(a)(4). J.H.'s attorney was also present in court that day, but she never asked the court or the Government for the chance to address the court personally on behalf of J.H. The court, therefore, did not deny any such request as none was made. About a week later, the district court granted the Government's motion to strike the special

4

felony allegations from the indictment, reducing the conviction to a misdemeanor. The court also rejected the parties Rule 11(c)(1)(C) post-trial plea agreement and set the final hearing on June 2, 2025.

On June 2, 2025, just 24 minutes before the scheduled sentencing hearing, J.H.'s attorney e-mailed an unfiled draft of her mandamus petition. Neither J.H. nor her attorney showed up in court on June 2, 2025, depriving the court and parties any chance of addressing her concerns. J.H.'s attorney now seeks to vacate the district court's order striking the felony allegations. She thinks the district court got it wrong when it applied the law to the parties' joint Rule 48(a) motion.

As explained herein, however, J.H. was afforded all of the pertinent rights under the CVRA, and J.H.'s claims of error are groundless and unpreserved. Separation-of-powers gives the Government broad prosecutorial discretion to reduce the severity of convictions and sentences, and the CVRA provides expressly that nothing in it empowers victims to interfere with prosecutorial discretion. The petition should be denied, accordingly.

## IV

## STATEMENT OF FACTS

### A.    The Offense

On June 24, 2023, victim J.H. and an associate "D.B." were at a Winco grocery store in Lancaster, CA, and became involved in a heated verbal exchange with store staffers, including a Loss Prevention employees. (CR 104 at 8-11.) Ultimately, that confrontation led to J.H. assaulting one store employee by shoulder checking him with her right shoulder as she walked by him, then with her left shoulder as she passed him again, and then approaching within a few inches of his face, lowering her face mask, and spitting directly into his face. (*Id*. at 9-11.)

Upon seeing that, another store employee called 911 to summon police. The caller reported that J.H. was "assaulting" store employees and "spitting in their faces." The dispatcher alerted patrol officers of a "211 now" (*i.e.*, robbery in progress) at the grocery store. Dispatch texts to defendant and other deputies said the suspects were "fighting Loss Prevention" employees. (Ex. 121.) The dispatcher also provided physical descriptions of two suspects and their vehicle, which generally matched J.H. and D.B. Moments before defendant's arrival, another

deputy radioed that he was in contact with one suspect (D.B.), who he described as "uncoop" or "uncooperative."

Upon his arrival, defendant assisted the first deputy in detaining and handcuffing D.B. When that deputy identified J.H. as the second suspect, defendant turned and walked toward J.H., who was standing several feet away and using her cellphone to videotape the deputies' encounter with D.B. (*See* CR 104 at 12-13.) Having just assaulted a store employee (by spitting in his face) just a few minutes before and then seeing her associate D.B. detained by police, it is hard to imagine that J.H. did not understand that defendant was approaching her so he could detain and handcuff her, too.

As defendant reached for J.H.'s left arm, which she was using to hold up her cellphone, J.H. drew her left arm back, away from him, and she raised her right arm and then moved it in a downward "swatting" or "swiping away" movement. (CR 104 at 12-13.) As she did so, J.H. objected by saying, "No, you can't touch me! You can't touch me!" Defendant attempted to get control of J.H. as he walked/moved her toward and up against a nearby patrol vehicle. (*Id.*) As J.H. resisted, defendant told her simply to "stop." (CR 94 at 27-28.) Then, after only

7

five seconds had passed (*id*.; *see also* Ex. 45, time-mark 2:13-2:18),
defendant grabbed J.H.'s right wrist with his right hand, hooked the
side and back of J.H.'s neck, pinned/blocked/swept her legs, and forcibly
threw J.H. to the ground (CR 104 at 14).

After forcing J.H. to the ground, defendant attempted to handcuff
her for approximately one minute and 10 seconds. (CR 104 at 15-25
(time-mark 2:10-3:20 on bystander video).) However, J.H. resisted
those efforts and kept turning toward the defendant while protesting
his conduct. (*Id*.) After approximately 24 seconds, defendant used his
department-issued pepper spray by spraying it into J.H.'s face. (CR 104
at 19-20.) Defendant was then able to handcuff J.H., although still not
without some difficulty. (*Id*. at 20-25.)

## B.   Trial and Conviction

On September 4, 2024, a grand jury indicted defendant for a
felony violation of 18 U.S.C. § 242 (Willful Deprivation of Rights Under
Color of Law). The indictment alleged that, on June 24, 2023,
defendant, then acting as a Deputy with the L.A. County Sheriff's
Department ("LASD"), used unreasonable and unnecessary force to
detain and secure J.H.'s person while attempting to conduct an

investigatory detention of J.H. and her associate D.B. for a reported robbery at a grocery store in Lancaster, CA, which thereby deprived J.H. of the right, as stated in the Fourth Amendment, "to be secure in [her] person[] … against unreasonable … seizure." (CR 1 at 2, 5.) The indictment also alleged felony enhancements that, during his commission of the offense, defendant used a "dangerous weapon" (*i.e.*, pepper spray) and caused J.H. to sustain "bodily injury."

On February 6, 2025, after a three-day trial, a jury found defendant guilty of Deprivation of Rights Under Color of Law, in violation of 18 U.S.C. § 242. (CR 51 at 2.) In its verdict, the jury also made an ambiguous special finding that "J.H. suffered bodily injury as a result of [defendant]'s acts" <u>or</u> "the defendant[]' acts included the use of a dangerous weapon." (*Id.*)

The court scheduled sentencing for April 21, 2025. (CR 50.)

## C.  Rule 29 Motion and Continuances of Sentencing

On February 20, 2025, defendant filed a motion for acquittal and to set aside the verdict under Fed. R. Crim. P. 29(c). (CR 63.) The motion argued that there was insufficient evidence that defendant used

excessive force and that defendant acted willfully. (*Id.*) The Government opposed the motion. (CR 68.)

On March 12, 2025, by stipulation of the parties, the district court continued the sentencing hearing to May 19, 2025. (CR 66, 67.) The continuance was requested due to the unavailability of the victim's attorney on the original date. (CR 66.)

On April 10, 2025, the parties filed a stipulation to continue the sentencing to August 18, 2025. (CR 69.) The continuance was requested to allow defendant more time to prepare and file his sentencing brief and to allow the Government an "opportunity to review the facts and circumstances of this case, including facts bearing on sentencing, and confer with the trial team in advance of the filing date for the United States' sentencing position." (*Id.*)[1]

---

[1] The Government's post-trial review and reconsideration of litigative positions in a given case, or a group of cases, is not new. In December 2022, for example, the Department issued a memorandum that established a new set of policies regarding charging, pleas, and sentencing and, to ensure compliance with it, directed prosecutors to review all pending cases "in which a final judgment after sentencing [had] not been imposed" and to "take steps to render the charging document, any plea agreement, and the sentence consistent with these policies." *See* Garland Memo, at 6 (Dec. 16, 2022). That directive applied even "if a defendant ha[d] already been convicted at trial" and,

(continued . . . .)

10

On April 13, 2025, the attorney for victim J.H. filed an objection to the parties' stipulation to continue the sentencing and moved for a forthwith sentencing of defendant.  (CR 70.)

On April 14, 2025, the U.S. Probation Office ("USPO") issued its original Pre-Sentence Report in this case and a letter setting forth a recommended sentence of 87 months' imprisonment.  (CR 71, 72.)  By applying the aggravated-assault guideline to calculate the Base Offense Level under the Sentencing Guidelines, the USPO determined that defendant had a Total Offense Level of 31, which, in Criminal History Category I, produced an advisory Guideline range of 108-135 months, which exceeded the statutory maximum sentence of 10 years' imprisonment.  (*See* PSR ¶¶ 65, 71, 127.)

---

in appropriate cases and required the dismissal or striking of statutory sentencing enhancements.  In March 2023, the USAO created a Conviction Integrity Committee that would "continually review our work as prosecutors and will buttress all of the policies and procedures designed to prevent wrongful convictions."  And, long before any of those policies were issued, line prosecutors were allowed (with supervisory approval) to dismiss or strike statutory enhancements after trial to ensure substantial justice.  *See, e.g., United States v. Juan Zazueta*, Case No. SA CR 04-251-AHS (Jan. 19, 2007) (post-trial agreement in which USAO agreed to strike § 851 Information to avoid unwarranted disparity in sentencing of defendant and co-defendants).

On April 15, 2025, the district court issued an order to schedule a status conference to consider the parties' stipulation to continue the sentencing. (CR 74.) On April 18, 2025, the district court denied defendant's motion for acquittal. (CR 75.)

On April 21, 2025, the district court held a status conference to consider the parties' stipulation to continue and J.H.'s objection thereto. (CR 76.) The court rejected the stipulation and declined to continue the sentencing hearing. (*Id.*)

## D. Post-Trial Agreement Regarding Plea & Sentencing and Victim J.H.'s Related Court Filings

On May 1, 2025, the parties entered and filed a Post-Trial Agreement Re. Plea & Sentencing. (CR 82.) In that agreement, the Government agreed to strike a disjunctive special finding regarding the two felony allegations, with the intent being to downgrade the conviction from a felony to a misdemeanor. (*Id.*) In exchange, defendant admitted for the first time that he used unreasonable force while attempting to detain victim J.H., agreed to plead guilty to a misdemeanor violation of 18 U.S.C. § 242, and agreed to waive certain rights of appeal. (*Id.*) Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the

parties also agreed to jointly recommend a probationary sentence with specified conditions and a fine of up to $5,500.  (*Id.*)[2]

On May 6, 2025, the district court issued an order requiring the parties to provide case authorities explaining whether the court had legal authority to grant the motion to strike the special finding from the verdict.  (CR 90.)

On May 7, 2025, J.H.'s attorney filed a form notice of appearance as the attorney for victim J.H.  (CR 91.)  Given that the victim's attorney was previously able to file an objection to the stipulation to continue sentencing and the district court considered her objection

---

[2]  In light of the victim's objection to a misdemeanor disposition, it bears noting that, prior to trial, the Government was willing to enter into a plea agreement that would have allowed defendant to plead to a misdemeanor violation of § 242.  Specifically, in an e-mail to defendant's attorneys, dated December 20, 2024, Government counsel advised as follows:

> After running your request up the chain of command for a diversionary disposition in this matter, we unfortunately are unable to agree to a diversionary disposition.  However, we are authorized to keep open our offer in principle to a misdemeanor disposition[.]

So, the Government's Post-Trial Agreement for a misdemeanor disposition is not a sharp departure from the Government's prior assessment of this case and how it should be resolved.

when denying the stipulated continuance (*see* CR 70, 75), it is unclear why the victim's attorney felt the need to file a general notice of appearance.

On May 9, 2025, a deputy clerk of the district court issued a "Notice to Filer of Deficiencies in Filed Document." (CR 92.) The notice identified only one deficiency: "The represented party is not a party to the case." (*Id.*) Significantly, the notice *did not* purport to reject or strike the document or to bar the victim's attorney from filing any other documents on behalf of J.H. (*Id.*) Rather, "[i]n response to this notice," the clerk advised J.H.'s attorney that "the Court may: (1) order an amended or correct[ed] document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so." (*Id.*)

The district court also never struck the notice of appearance. (*See* docket sheet.) Moreover, as detailed below, J.H.'s attorney was later able to file a legal brief on behalf of J.H. objecting to the Post-Trial Agreement and to the Government's planned motion to strike the verdict's special felony findings. (*See* CR 99, 100.)

14

On May 13, 2025, the Government filed its response to the district court's order. (CR 93.) The Government explained that Fed. R. Crim. P. 48(a) was the basis for the requested order to strike the special finding from the verdict. (*Id*. at 1.) The Government further explained that it was moving "conditionally" pursuant to Rule 48(a) and the Post-Trial Agreement to strike the special felony-allegations from the indictment, namely, the alleged use of a "dangerous weapon" and resulting "bodily injury," in addition to the verdict's related special finding(s). (*Id*.) On May 15, 2025, the Government filed a supplemental response to provide the court with some additional case authorities. (CR 95.)

On May 17 and 18, 2025, over the weekend right before the sentencing hearing, the victim's attorney filed a formal legal brief on behalf of victim J.H. and then an amended version of that document. (*See* CR 99, 100; *see also* Petition at 7.) In the later amended document, styled as the "Crime Victim's Amended Statement," the victim's attorney responded to the Government's brief and objected to the Post-Trial Agreement and the Government's plan to downgrade the conviction from a felony to a misdemeanor. (*Id*.) In that filing, the

15

victim's attorney made essentially the same points raised in her pending petition: (1) the Government has cited no error with the trial or other good cause for the post-trial decision to downgrade the conviction to a misdemeanor; (2) the Government's case authorities were inapt; (3) the post-trial decision improperly gave the defendant two bites at a misdemeanor plea and was a bad practice that would dispirit people from jury service; (4) the proposed misdemeanor disposition was inadequate and amounted to "no punishment"; (5) defendant deserves jail time; and (6) the Post-Trial Agreement falsely denied that J.H. suffered bodily injuries because it did not require the defendant to admit that fact and cited facts (allegedly "[f]or the first time") that J.H. "swatted" at defendant and otherwise "resisted" his attempt to restrain and detain her. (*Id.* at 2, 5-6, 11-13.)[3]

---

[3] The victim is incorrect when she suggests that the failure to include a felony-triggering fact in a plea agreement's factual basis constitutes a "false" claim. As noted above, pursuant to the Garland Memo, allegations and special verdict findings regarding drug-quantities were often stricken to avoid triggering mandatory minimum sentences. Those actions did not falsely deny the drug-quantities; they were simply omitting the drug-quantities to avoid what were then seen as undesirable legal consequences triggered by such allegations and findings. *See United States v. Eric Schmidt*, Case No. CR 22-174-SB, docket entries CR 65 and 70 (after a two-day jury trial in which the jury

(continued . . . .)

**E.  May 19, 2025: Hearing on Post-Trial Agreement, Sentencing, and the Government's Rule 48(a) Motion**

On May 19, 2025, the district court held a hearing on the government's Rule 48(a) motion and sentencing.  No transcript is yet available for that hearing, but the record reflects that J.H. was given an opportunity to address the court.  (*See* CR 101 (Minutes of Sentencing).)  In her pending petition, the victim also acknowledges that she "was granted an opportunity to address the court" at the May 19, 2025

---

found that the drug-trafficking offense involved more than 400 grams of fentanyl, which triggered the 10-year mandatory minimum sentencing provision in 21 U.S.C. § 841(b)(1)(A), the Government moved to strike the drug-quantity allegation from the indictment pursuant to Rule 48(a) and the Garland Memo, and the district court granted the motion and then imposed a sentence well below 10 years).

Also, the victim is also incorrect when she claims that the references to her "swatting" movement and "resistance" are new facts that the Government has just raised "for the first time."  In fact, the Government acknowledged J.H.'s swatting movement in its opening statement at trial, although the prosecutor described it there by saying J.H. "pulled her arm away and swiped away at the defendant's hold of her arm." (*See* CR 58 at 9.)  With similar wording, the Government also acknowledged J.H.'s swatting movement in its opposition to defendant's motion for acquittal.  (*See* CR 68 at 5 ("J.H. reactively pulled her arm away and attempted to swipe away defendant's grasp.").)  The video evidence also shows J.H.'s swatting/swiping movement.  (*See* CR 104 at 12-13.)  At trial, other acts of resistance and non-compliance were acknowledged but described in part as efforts at "de-escalation."

hearing.  (*See* Petition at 8.)  Moreover, in the petition, the victim

admits "the district court acknowledged reading [the victim's] impact

statement (Dkt. #100)" at the May 19, 2025 hearing.  (*See* Petition at 7.)

In her petition, the victim notes that "J.H.'s counsel was not heard

on the argument on the Rule 48(a) motion."  (Petition at 8.)  That is

correct, but J.H.'s attorney never asked to address the court at that

hearing.  Government counsel does not recall J.H.'s attorney advising

that she wanted to address the district court in person at the hearing,

and the victim's petition is noteworthy in that it makes no such claim.

At the end of the hearing, the district court decided to take the Rule

48(a) motion under submission and continued the sentencing to June 2,

2025.  (*See* CR 101, 102.)

## F.   The District Court Granted the Rule 48(a) Motion in Part, But Rejected the Parties' Rule 11(c)(1)(C) Agreement

On May 27, 2025, the district court issued an order granting the

Government's motion to strike the special felony allegations from the

indictment, but it declined to strike the verdict's related findings.

(CR 103.)  The court explained that its discretion, if any, to deny a

Government motion to dismiss or strike under Rule 48(a) is very limited

when, as here, the defendant concurs in and joins the motion.  (*Id*. at 2-

5.)  The court acknowledged that such issues fall within the Government's prosecutorial discretion and any limit on that discretion raised separation-of-powers issues.  (*Id.*)

The court separately rejected the parties' post-trial Rule 11(c)(1)(C) agreement.  (CR 103 at 6-7.)  The court explained that, with the felony allegations stricken, defendant stood convicted, by a jury, of the misdemeanor violation of § 242.  The court also expressed the view that "straight probation" was insufficient to satisfy all of the statutory objectives of sentencing set forth in 18 U.S.C. § 3553(a).  (*Id.*)  Accordingly, the court declared that all that was left to do in this case was sentencing, which would proceed on June 2, 2025, at 11:00 a.m. (*Id.* at 7.)

On May 29, 2025, the Government filed a supplemental sentencing brief.  (CR 104.)  Among other things, the Government's brief referred expressly to the Victim's Amended Statement and responded to part of it.  (*See id.* at 3, n.3.)  Based on *Booker* and § 3553(a), the Government recommended a one-year probationary sentence with additional conditions (*i.e.*, three months' home detention and 200 hours community service) plus a $5,000 fine.

19

**G.    June 2, 2025: The Court Conducts a Continued Sentencing Hearing, and Neither J.H. Nor Her Attorney Show Up**

During the two weeks in between the May 19, 2025 hearing and the final sentencing hearing on June 2, 2025, J.H.'s attorney never attempted to contact the Government's counsel to request an opportunity to be heard on behalf of J.H. in court regarding the Rule 48(a) motion.  Nor did she file a new brief or motion with the district court to ask for permission to address the court at the next hearing.  If she had, the Government would have had no objection to her doing so — either on May 19 or June 2, 2025.

Instead, at 10:36 a.m. on Monday, June 2, 2025, just twenty-four minutes before defendant's scheduled sentencing hearing, J.H.'s attorney sent an e-mail to counsel for the Government and defendant and to the district court's deputy clerk.  The e-mail attached an unfiled copy of her writ petition and said that J.H. "is filing [it] with the 9th Circuit this morning with regarding this case."  Upon arriving in court, however, Government counsel noticed that neither J.H. nor her attorney were present.  At 10:57 a.m., Government counsel sent an e-mail to J.H.'s attorney asking her if she was in the courthouse.  The

Government never received a reply from J.H.'s attorney, and neither J.H. nor her attorney ever showed up during the hearing.

According to the Circuit's ECF notification, J.H.'s mandamus petition was filed at 11:38 a.m. on June 2, 2025, while the district court and the parties were conducting the scheduled sentencing of defendant. All phones were off per order of the district court.

Unfortunately, the transcript of the sentencing hearing is also not yet available. However, the Government's recollection is that at the start of the hearing, counsel for defendant and the Government advised the district court of the unfiled mandamus petition that J.H.'s attorney had just e-mailed to counsel and the deputy clerk. The district court took a brief break to consider whether the contemplated mandamus petition itself required the court to continue defendant's sentencing hearing. After the break, the district court announced that it did not believe the petition itself required the court to delay the sentencing.

Accordingly, the court proceeded with the sentencing hearing. It heard briefly from defense counsel, then from the Government, and then provided defendant an opportunity to allocute, which he declined. The Court then sentenced defendant to 4-months' imprisonment, one-

year supervised release on various conditions, a $25 special assessment, and declared all fines waived. (*See* CR 109, 110.)

V

## STANDARD OF REVIEW

This Court has explained that "[p]etitions for writs of mandamus under the Crime Victims' Rights Act are subject to 'ordinary standards of appellate review.'" *In re Davis*, --- F.4th ---, 2025 WL 1551409, at \*4 (9th Cir. June 2, 2025) (quoting *In re Doe*, 57 F.4th 667, 672-73 (9th Cir. 2023)). "Legal conclusions are reviewed de novo, factual findings are reviewed for clear error, and discretionary judgments are reviewed for abuse of discretion." *Id.*

VI

## ARGUMENT

J.H. argues that the district court committed multiple violations of the CVRA. For the reasons explained below, each of her claims is either moot or meritless.

### A. Defendant's Request To "Stay" Sentencing Is Moot Because Defendant Has Already Been Sentenced

In her petition, J.H. asks this Court to "[s]tay all proceedings in the case, including the sentencing that is scheduled for June 2, 2025."

22

(*See* Petition at 3.) However, J.H.'s belated request for a "stay" is moot because the district court sentenced defendant on June 2, 2025, as scheduled at around 11:45 a.m., on or about the time J.H. finally wound up filing her mandamus petition. Nothing else remains of the proceedings before the district court. Thus, a stay order would be of no purpose or effect at this point.

To the extent that J.H.'s petition is construed as a request to vacate defendant's sentence, it is not procedurally proper. Although the CVRA permits sentencing hearings to be "re-opened," that is only true if three conditions are satisfied. *See* 18 U.S.C. § 3771(d)(5). First, consistent with § 3771(d)(3), the victim must have "asserted the right to be heard before or during the proceeding at issue and such right was denied." *Id*. § 3771(d)(5)(A). Second, the victim must petition the court of appeals for a writ of mandamus within 14 days. *Id*. § 3771(d)(5)(B). Third, in the case of a plea, the accused has not pled to the highest offense charged. *Id*. § 3771(d)(5)(C); *see also In re Davis*, 2025 WL 1551409, at \*9-10 (describing these limitations).

In this case, the petition is defective because the victim does not satisfy the first condition. As this Court recently recognized, "a crime

23

victim seeking to reopen a sentencing based on the victim's right to be heard, § 3771(a)(4), must be able to show that they were denied the right to speak at the prior proceeding, § 3771(d)(5)(A)." *In re Davis*, 2025 WL 1551409, at *10. But J.H. did not "assert" in the district court the particular procedural right that she seeks to vindicate in this mandamus, namely, the right of *victim counsel* to be heard in court to personally address the court on an issue involving the final disposition of the case. *Id.* § 3771(d)(5)(A). J.H.'s petition also fails to establish that the district court "denied" that right. *Id.*

Accordingly, J.H.'s request for a stay is moot, and she has no right under the CVRA to re-open the sentencing or the district court's decision to grant the Rule 48(a) motion.

## B. The District Court Did Not Reject J.H.'s Attorney's Notice of Appearance

J.H.'s second request for mandamus relief is also invalid. She asks this Court to order the district court to "[a]ccept the notice of appearance [filed] by counsel for J.H. (CR 91) and rejected by the court (CR 92)." (*See* Petition at 3 (cleaned up citations).)

The docket sheet, however, does not reflect that the district court ever rejected the notice of appearance filed by J.H.'s attorney. Two days

24

after it was filed, a deputy clerk issued a "Notice to Filer of Deficiencies in Filed Document." (CR 92.) The notice identified only one deficiency: "The represented party is not a party to the case." (*Id.*) But the notice *did not* purport to reject or strike the document or to bar the victim's attorney from filing any other documents on behalf of J.H. (*Id.*) Rather, "[i]n response to this notice," the deputy clerk advised J.H.'s attorney that "the Court may: (1) order an amended or correct[ed] document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so." (*Id.*)

According to the docket sheet, the district court never struck the notice of appearance. Moreover, as noted above, J.H.'s attorney was later able to file a legal brief on behalf of J.H. objecting to the Post-Trial Agreement and to the Government's motion to strike the special felony allegations and findings. (*See* CR 99, 100.) Thus, even if the notice of appearance had been rejected, that clearly had no meaningful effect on the ability of J.H.'s attorney to file legal documents on behalf of J.H. *See In re Zackey*, 2010 WL 3766474, at *1 (3d Cir. 2010) (unpublished)

25

(rejecting victim's claim that the district court erred "by improperly denying his motion to allow Attorney Jessica Richman to enter an appearance on the record" because the district court considered the victim's views).

Any rejection of the notice of appearance also did not prejudice J.H.'s right to be represented by counsel or the "right to be reasonably heard" at any public hearing involving a plea or sentencing. The district court allowed J.H. to be heard at the May 19, 2025 hearing on the Rule 48(a) motion, the post-trial plea agreement, and sentencing. (*See* Petition at 8; CR 101.)

## C. J.H.'s Attorney Did Not Assert The Right to Personally Be Heard At the May 19, 2025 Hearing, and The District Court Did Not Deny Any Such Request

For her third request for mandamus relief, J.H. asks this Court to order the district court to "[a]llow counsel for J.H. to be heard to address the legal interests involving J.H.'s rights as a crime victim under 18 U.S.C. § 3771." (Petition at 4.) This request is also invalid under § 3771(d)(5)(A) because J.H. and her attorney did not "assert" this particular right before or during the May 19, 2025 hearing, and they both failed to appear at the June 2, 2025 hearing to assert the

right. Thus, the district court never "denied" any request by J.H.'s attorney to address the court at either hearing.

As noted above, J.H.'s attorney never asked to personally be heard on J.H.'s behalf prior to the May 19, 2025 or June 2, 2025 hearings. Though she was in court on May 19, 2025, she never asked for the opportunity either by directly putting the request to the court or doing so indirectly through Government counsel. As a result, the district court was never called upon to rule whether J.H.'s attorney could address the court in person in addition to J.H. herself. For that reason, the district court never "denied" or disallowed J.H.'s attorney the right to be heard at the hearing.

Nor was it plainly obvious that the district court should have thought it was necessary to elicit comment from J.H.'s counsel or that J.H. was prejudiced by not affirmatively calling upon J.H.'s attorney to address the court. The CVRA allows for victims to be represented by counsel, but rights under the CVRA are established for the benefit of victims, not their attorneys. *See* 18 U.S.C. § 3771(a) (establishing that "[a] *crime victim* has [certain specified] rights," which it then lists). And as the legislative history reflects, "the very purpose of this section is to

27

allow the victim to appear personally and directly address the court."
*United States v. Burkholder*, 590 F.3d 1071, 1075 (9th Cir. 2010)
(emphasis omitted) (quoting legislative history). "Only if it is not
practical for the victim to speak in person or if the victim wishes to be
heard by the court in a different fashion should this provision mean
anything other than an in-person right to be heard." *Id.* (emphasis
omitted); *see also In re Zackey*, 2010 WL 3766474, at *1 (affirming the
district court's conclusion that "the CVRA 'does not require that [a
victim] be represented by counsel when being heard, or that victim's
counsel be allowed to speak during the sentencing or any other
proceeding in the case'" (alteration in original)).

In this case, the district court allowed the victim to be heard at
the hearing on the Rule 48(a) motion on May 19, 2025. (*See* Petition at
8; CR 101.) The victim addressed the court at length regarding the
seriousness of the offense, objected in substance to the post-trial plea
agreement, and expressed her alternative views regarding the
appropriate sentence — namely, that defendant should receive the
maximum sentence, *i.e.*, 10 years' imprisonment. Before the hearing,
the court *accepted the filing* of J.H.'s attorney's legal brief raising

objections to the Post-Trial Agreement and specifically the Government's intent to downgrade the case to a misdemeanor and recommend a probationary sentence. (CR 101.) Moreover, as J.H. admits in her petition, "at the [May 19] sentencing hearing, the district court acknowledged reading the [victim] impact statement" (CR 100). (*See* Petition at 7.) As a result, the district court complied with its obligations under the CVRA. *See Burkholder*, 590 F.3d at 1075-76 (holding that "the district court did not violate the right to be reasonably heard" because it read and considered the victims' "written statements").

## D.   The District Court Considered J.H.'s Objections to the Rule 48(a) Motion, and The CVRA Does Not Entitle Victims to Override The Government's Prosecutorial Discretion

In her final request for mandamus relief, victim J.H. asks this Court to vacate the district court's order striking the felony allegations from the indictment, which reduced the conviction to a misdemeanor, and to reconsider the issue in light of J.H.'s objections thereto. (*See* Petition at 4.) This request is invalid and should be denied for at least two reasons.

29

First, as noted above, the district court heard directly from J.H. at the hearing on May 19, 2025 and received and considered the legal objections filed by J.H.'s attorney. (*See* Petition at 8, 9.) Thus, J.H.'s right under the CVRA "to be reasonably heard" at the hearing were fully satisfied. Because the district court was fully apprised of J.H.'s objections and contrary views of the case when it granted the Rule 48(a) motion, an order re-opening the matter will not achieve any legitimate purpose.

Second, J.H.'s request to re-open the matter is in direct conflict with the CVRA, which provides as follows: "Nothing in this chapter shall be construed to impair the prosecutorial discretion of the Attorney General or any other officer under his direction." *See* 18 U.S.C. § 3771(d)(6). The entire thrust of J.H.'s mandamus petition is that her "right to be treated with fairness and with respect" and her contrary views regarding the separation-of-powers regarding the resolution of criminal cases should override the Government's legal authority to exercise prosecutorial discretion.

That is not the law. As one court put it, the CVRA "gives victims a voice, not a veto." *See United States v. Rubin*, 558 F. Supp. 2d 411,

417-418 (E.D.N.Y. 2008) (citing § 3771(d)(6) to reject suggestion that the CVRA gave victim influence over various prosecutorial decisions). The rights to be "reasonably heard" and "be treated with fairness and respect" also do not provide victims with a vehicle to challenge a district court's substantive sentencing decisions. *See, e.g.*, *In re Brock*, 262 F. App'x 510, 513 (4th Cir. 2008) ("The CVRA does not provide victims with a right to appeal a defendant's sentence by challenging the district court's calculation of the Guidelines range."); *In re Ryan*, 88 F.4th 614, 621-23 (5th Cir. 2023) (recognizing that district court could not rely upon the CVRA to "excise" a term of a deferred prosecution agreement). Rather, the CVRA confers rights on victims that "are largely rights to notice of and participation in any court proceedings." *United States v. Kovall*, 857 F.3d 1060, 1070 (9th Cir. 2017). It does not permit victims to file the equivalent of a direct appeal or assume the role of the Government. *Id.*

The sole CVRA case on this point cited by J.H., *United States v. Heaton*, 458 F. Supp. 2d 1271 (D. Utah 2006), did not reach a contrary conclusion. (Petition at 20-21.) In *Heaton*, the district court merely found that "before granting any motion by the government under Rule

31

48(a) to dismiss charges involving a specific victim, the court must have the victim's views on the motion." 458 F. Supp. 2d at 1273. Again, the district court had the benefit of J.H.'s views — which were expressed in open court and in written submissions — before granting the Rule 48(a) motion. And to the extent that J.H. claims that the district court had an obligation to expressly state why it rejected her views (Petition at 16), she cites no authority for that proposition. *See, e.g.*, *Brock*, 262 F. App'x at 512 (rejecting claim that "the district court's refusal to consider arguments from [the victim] concerning Guidelines calculations prevented him from being reasonably heard or treated fairly"); *United States v. Hayes*, 394 F. App'x 302, 303 (7th Cir. 2010) (rejecting claim that the district court's explanation for sentence should have addressed the victim's arguments).

Even if J.H.'s claim is properly brought via the CVRA, the district court accurately summarized the law, which makes clear that courts have very limited discretion, if any, to deny a Rule 48(a) motion to dismiss or to strike allegations from an indictment when the defendant does not object to the motion. (CR 103 at 2-3.) The Government may bring Rule 48(a) motions even if the jury has already returned a verdict.

*See Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977) (holding that the district court abused its discretion by denying a Rule 48(a) motion brought after a jury trial and while the case was on appeal).

District courts have limited discretion to deny Rule 48 motions. Indeed, "[s]eparation-of-powers concerns generally require a district court to defer to the government's decision to seek a dismissal of a criminal charge because a denial of the government would represent an intrusion upon prosecutorial prerogative." *United States v. Gonzalez*, 58 F.3d 459, 461 (1995). In fact, "[w]here a defendant consents to the government's move to dismiss," as is the case here, "it is not clear that the district court has any discretion to deny the government's motion." *United States v. Garcia Valenzuela*, 232 F.3d 1003, 1008 (9th Cir. 2000); *see also In re U.S.*, 345 F.3d 450, 453 (7th Cir. 2003) (Posner, J.).

Notwithstanding the above, Rule 48 motions still require that the Government obtain "leave of court." Fed. R. Crim. P. 48(a). But consistent with the "separation-of-powers concerns" surrounding judicial review of Rule 48(a) motions, this "leave of court" requirement affords only limited discretion to deny Rule 48(a) motions. As put by the Supreme Court, "[t]he principal object of [Rule 48's] 'leave of court'

requirement is apparently to protect a defendant against prosecutorial harassment, *e.g.*, charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection." *Rinaldi*, 434 U.S. at 29 n.15.

Here, even assuming that the "leave of court" requirement in Rule 48 gives a district court limited discretion to deny a Rule 48 motion, the district court found that no circumstances warrant denying the government's motion in this case. There are no concerns of prosecutorial harassment here. Defendant consents to the Government's motion to dismiss. (CR 103.) And the district court specifically addressed J.H.'s concern that there are no "published cases where a court dismisses only a portion of a single count of an indictment," explaining that the "separation of power principles at play, and the broad deference that must be given to the executive in charging decisions" weighed in favor of granting the motion. (CR 103 at 4 n.4.)

Nothing in the CVRA grants special veto powers to J.H. or any other victim to override the Government's prosecutorial discretion. Indeed, § 3771(d)(6) says that the CVRA does not impair that discretion. As a result, J.H.'s petition should be denied.

34

# VII

# CONCLUSION

For the reasons set forth above, the Court should deny the petition.

DATED: June 3, 2025.

Respectfully submitted,

BILAL A. ESSAYLI
United States Attorney

CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division

*/s/ Robert J. Keenan*

ROBERT J. KEENAN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## STATEMENT OF RELATED CASES

The government states, pursuant to Ninth Circuit Rule 28-2.6, that it is unaware of any cases related to this appeal.

## CERTIFICATE OF COMPLIANCE

I certify that:

1.      This brief complies with the length limits permitted by Ninth Circuit Rule 32-1 because the brief contains ___6,857___ words, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2016.

DATED: June 3, 2025.                    */s/ Robert J. Keenan*

                                                 _____
                                                 ROBERT J. KEENAN
                                                 Attorney for Plaintiff
                                                 UNITED STATES OF AMERICA